**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| GROOVE DIGITAL, INC., ) | |
|     Plaintiff, ) | |
|     v.     ) | C.A. NO. 1:18-cv-00966-LO-TCB |
| ) | |
| UNITED BANK, ) | JURY TRIAL DEMANDED |
| ) | |
|     Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**PLAINTIFF GROOVE DIGITAL, INC.'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................... ii

I.    INTRODUCTION ...........................................................................................1

II.    ASSERTED PATENT AND ACCUSED PRODUCTS ...........................................1

III.    LEVEL OF A PERSON OF ORDINARY SKILL IN THE ART ..........................1

IV.    APPLICABLE LAW ........................................................................................2

V.    GROOVE DIGITAL'S PROPOSED CONSTRUCTIONS ...................................4

    a.  "internet browser" ..................................................................................4

    b.  "internet browser window" ....................................................................7

VI.    REMAINING DISPUTED TERMS ....................................................................9

VII.    CONCLUSION ..............................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ...................................................................................9

*Ancora Techs., Inc. v. Apple Inc.*,
   744 F.3d 732 (Fed. Cir. 2014) .....................................................................................7

*Applied Material, Inc. v. Tokyo Seimitsu, Co., Ltd.*,
   446 F.Supp. 2d 525 (E.D. Va. 2006) ...........................................................................3

*Inverness Med. Switz. GmbH v. Warner Lambert Co.*,
   309 F.3d 1373 (Fed. Cir. 2002) ...................................................................................2

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ................................................................................. 2-3

*Markman v. Westview Instr., Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) .......................................................................................3

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 2-3, 7

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ................................................................................. 2-3

**Statutes**

35 U.S.C. § 112 ....................................................................................................................2

I.  **INTRODUCTION**

In this patent infringement action involving U.S. Patent No. 9,454,762 (the "'762 Patent"), Plaintiff Groove Digital, Inc. ("Groove Digital") proposes the construction of only two related terms: (i) "internet browser" and (ii) "internet browser window." Groove Digital interprets those two claim terms in accordance with their plain and ordinary meaning, in the context of and consistent with the specification and the prosecution history, whereas Defendant United Bank, in a transparent attempt to avoid infringement, seeks to narrow the scope of the asserted claims by impermissibly importing limitations from the specification and adding extraneous requirements unsupported by law or the intrinsic evidence.

II.  **ASSERTED PATENT AND ACCUSED PRODUCTS**

The '762 Patent generally claims improvements in the delivery and display of digital content to computer systems by using applet applications (colloquially known as "apps"). The improvements include the use of app-based alerts known as "push notifications" to provide (i) content directly to a device, and (ii) browser links to specific web pages known as "deep-link URLs." Additional improvements include the ability of the apps to passively deploy and terminate operation without requiring any input from the user of the device and to deliver content independent of the browser used. Groove Digital has accused United Bank of directly and indirectly infringing all claims of the '762 Patent through its "Bank With United" mobile banking applications, available on various platforms including Apple iOS and Google's Android platforms.

III.  **LEVEL OF A PERSON OF ORDINARY SKILL IN THE ART**

Groove Digital contends that a person of ordinary skill in the art with respect to the '762 Patent would have at least a bachelor's degree in Electrical Engineering or Computer Science and at least two years' experience related to computer networking and communications, or someone

1

who has attained comparable knowledge through direct work experience in the field. The pertinent art for the claimed inventions of the '762 Patent is computer networking and communications.

## IV. APPLICABLE LAW

Any claim construction analysis must begin with the words of the claim. "[T]he words of a claim 'are generally given their ordinary and customary meaning' . . . the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). This ordinary meaning "may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1313. In analyzing the claim language, the court must analyze the context in which the term appears and the other claims of the patent to gain insight on the patentee's intention for the claim definition. If the meaning of a term is not immediately apparent, courts must look to the written description and prosecution history to provide guidance as to the meaning of the claim terms. *Id*.

The specification contains a written description of the invention as well as the manner and process contemplated by the inventor for making and using it. *See* 35 U.S.C. § 112. "[It] is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics*, 90 F.3d at 1582; *see Phillips*, 415 F.3d at 1315. There is a distinction, however, between using the specification to analyze claim terms and incorporating limitations from the specification into the claim language. *See Phillips*, 415 F.3d at 1323; *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004). "It is improper to limit the claim based on a preferred embodiment of the invention." *Inverness Med. Switz. GmbH v. Warner Lambert Co.,* 309 F.3d 1373, 1379 (Fed. Cir. 2002); *see Liebel-Flarsheim*,

358 F.3d at 906 at 13 ("[I]t is improper to read limitations from a preferred embodiment described in the specification–even if it is the only embodiment–into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").

The prosecution history may be useful in determining how the inventor understood the patent and invention, and may provide evidence that the inventor limited the invention during the course of prosecution, thus restricting the scope of the claim language. *Phillips*, 415 F.3d at 1317. A court should not rely too heavily on the prosecution history, however, because it "represents an ongoing negotiation between the U.S. Patent and Trademark Office ("PTO") and the applicant, rather than the final product of that negotiation, [such that] it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id*.

A court may also consider extrinsic evidence, "which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317-19 (quoting *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995)). Extrinsic evidence should not be used "to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id*. at 1324. "While the [*Phillips*] court cautioned against using dictionaries as the primary method of construing claims, [it] did not preclude the use of dictionaries." *Applied Material, Inc. v. Tokyo Seimitsu, Co., Ltd.*, 446 F.Supp. 2d 525, 530 (E.D. Va. 2006). "Instead the *Phillips* court reiterated the holding in *Vitronics*: '[j]udges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.'" *Id.* (quoting *Phillips*, 415 F.3d at 1322-23).

3

## V. GROOVE DIGITAL'S PROPOSED CONSTRUCTIONS

### A. "internet browser"

| Term | Groove Digital's Proposed Construction | United Bank's Proposed Construction |
|---|---|---|
| "internet browser" | "a program capable of interacting with servers over the Internet to send and receive information." | "a program, such as Netscape Navigator or Internet Explorer, that enables the user to find, locate, retrieve, and navigate any web pages on the internet." |

As is apparent from a comparison of the two proposed constructions, the parties agree that the claimed internet browser is a program that receives (or "retrieves" in United Bank's language) information over the Internet. Nor can there be any dispute that an internet browser cannot perform those functions without sending information in order to receive information and that it must interact with servers, which are the locations in which the information to be received is stored. *See* Ex. A, MODERN DICTIONARY OF ELECTRONICS at 683 (7th ed. 1999) (defining "server" as "a computer on a network that serves as a central repository for data and programs and which can be accessed over the network by other computers, called clients"). Thus, the differences between parties' constructions are centered on whether the internet browser (a) must "enable[] the user" to perform certain functions, (b) must also "find," "locate," and "navigate" information (to the extent that "find" and "locate" are different), (c) must be limited to information on "web pages," and (d) should include the specification's non-limiting examples of Netscape Navigator and Internet Explorer. As will be shown below, those requirements proposed by United Bank are extraneous and unnecessary, rendering them improper.

Groove Digital's definition is consistent with the specification of the '762 Patent, which requires only that the internet browser is the component of the claimed applet that sends and

receives information for display to the user. For example, the Summary of the Invention states that "[t]he present invention teaches a system and method for delivering and serving content, information and/or advertisements to an end user on a network" and that the browser is "[t]he location in the applet where the content is located." '762 Patent at col. 2, ll. 55-57; col. 3, ll. 11-12. The specification further states that the internet browser is where content can be viewed. *Id*. at col 10, ll. 53-55 ("The page that they are directed to presents a notice, the micro-browser and a coupon which can be viewed."). Thus the internet browser is the gateway through which content is sent and then received from servers for display on the user's networked device. The '762 Patent requires no more than that.

Although the term may be construed based on the intrinsic evidence alone, the extrinsic evidence further supports Groove Digital's definition. The Microsoft Computer Dictionary defines "web browser" as "[s]oftware that lets a user view HTML documents and access files and software related to those documents." Ex. B, MICROSOFT COMPUTER DICTIONARY AT 74, 562 (5th ed. 2002). Similarly, the Modern Dictionary of Electronics defines "browser" in its broadest sense as "[a]n application used to view information from the internet." Ex. A, MODERN DICTIONARY OF ELECTRONICS AT 85 (7th ed. 1999).

In contrast, United Bank contends that the term should be construed to include additional limitations that would require the browser to "enable a user" to "find," "locate," and "navigate" information. Nothing in the '762 Patent supports those limitations. The terms "find" and "navigate" do not appear anywhere in the patent, nor does the term "locate" appear anywhere as a function of the internet browser. Thus, while those might be *possible* functions of an internet browser, there is no basis to require their presence here. *See* Ex. A, MODERN DICTIONARY OF ELECTRONICS at 85 (7th ed. 1999) (providing a narrow definition of "browser" to mean "[a]

5

software application that permits viewing *and possible searching* of content in an information database") (emphasis added).

Further, United Bank's proposal that the internet browser be required to "enable[] the user" to perform certain functions is contradicted by the '762 Patent. The claims make clear that the system, and not the user, determines whether to obtain and deliver content for display. For example, claim 1, which is representative for purposes of claim construction, requires that the system "passively deploys" one or more applets (which, as noted above, include the internet browser for displaying content). '762 Patent at col. 14, ll. 14-15. Claim 1 further requires that the internet browser deploy (*i.e*, display information) based on at least one action *or inaction* of the user, i*d*. at col. 1, ll. 24-27, and that the decision whether to send content is made by the processor. *Id*. at col. 14, ll. 39-43. Similarly, the Summary of the Invention makes clear that the invention "provide[s] content delivery to the user" and that content may be "delivered to a user." *Id*. at col. 2, ll. 59, 65-66. Given the user's passive role in obtaining and delivering content, it would be improper to construe "internet browser" in a way that requires enabling a user actively to perform the necessary functions.

Nor is there any basis to limit the claimed internet browser to obtaining information from "web pages," as the '762 Patent requires only that the information displayed by the internet browser come across a network, which need not be limited to web pages. The architecture described in claim 1, for example, requires a networked device, a microprocessor, and databases coupled to the microprocessor. '762 Patent at col, 14, ll. 9-43. The information delivered to the networked device by the internet browser comes from those databases, *id*. at ll. 34-43, but there is nothing in the '762 Patent that requires those databases to be web pages. *See id*. at Fig. 3 (showing the user (50) connected to CPT System (40) and database (52) over internet connection (42)).

Indeed, the Summary of the Invention states that the network "can be any type of network, including, for example, a LAN [local-area network], WAN [wide-area network], Internet, wireless, cellular, or WiFi." *Id*. at col. 2, ll. 60-62. Thus a construction that limits the information source to a web page would exclude sources disclosed in the claims and the Summary of the Invention.

Finally, United Bank's proposed construction also improperly adopts non-limiting examples of internet browsers "such as Netscape Navigator or Internet Explorer." Even though United Bank pulled that language from the specification, it is well-established that the use of non-limiting language is inappropriate for narrowing the claims. *Ancora Techs., Inc. v. Apple Inc.*, 744 F.3d 732, 735 (Fed. Cir. 2014) (non-limiting examples are "insufficient to redefine the term").

### B. "internet browser window"

| Term | Groove Digital's Proposed Construction | United Bank's Proposed Construction |
|---|---|---|
| "internet browser window" | "the graphical representation of the internet browser" | "a location in the applet where content from the internet is displayed by an internet browser." |

Groove Digital contends that the term "internet browser" should be interpreted consistently throughout the claims using the definition set forth above. *See Phillips*, 415 F. 3d at 1323 (ordinarily, the same term in a patent has the same meaning). Thus the only new element in this related term is the addition of "window." Groove Digital defines the terms "internet browser window" to mean simply "the graphical representation of the internet browser." United Bank, on the other hand, conflates the '762 Patent's use of "internet browser" and "internet browser window," relying on language regarding the former to define the latter.

As shown above, the "internet browser" is responsible for sending and receiving information that is displayed to the user. The "internet browser window" is simply the mechanism

7

by which that information is visually presented to the user—a graphical representation of the information that is displayed. That is consistent with the '762 Patent, which shows just such a graphical representation at Fig. 1:



As described in the patent, the applet is shown in Fig. 1 as element 2. '762 Patent at col. 5, ll. 25-26 ("[a]s shown in FIG. 1, applet 2 may be of any size"). Further, as noted above, the internet browser is the location in the applet where the content is located. *Id*. at col. 3, ll. 11-12. And according to claim 10, "the display of the content by the one or more applets is via a window that enters the viewing area of the user display from an edge of the user display of the networked device." *Id*. at col. 15, ll. 1-4. *See also* col. 15, ll. 60-63 (claim 21) and col. 16, ll. 61-64 (claim 32). It is thus clear from the claims alone that the window that displays the content is the internet browser window (in fact, the term "internet browser window" is not mentioned anywhere in the '762 Patent other than the claims).

8

Like the definition of "internet browser," Groove Digital's definition of "internet browser window" is also supported by technical sources. For example, the Microsoft Computer Dictionary defines a window as "[i]n applications and graphical interfaces, a portion of the screen that can contain its own document or message. Ex. B, MICROSOFT COMPUTER DICTIONARY at 567 (5th Ed. 2002).

To the extent that the Court adopts Groove Digital's proposed construction of "internet browser," there is little to distinguish the parties' proposed definitions of "internet browser window," because "graphical representation" is synonymous with "display." To the extent United Bank is attempting to differentiate the two terms, however, it relies on language for the latter that is appropriately reserved for the former. The '762 Patent states without equivocation that "[t]he location in the applet where the content is located may be a mini-web browser, such as, for example, Microsoft Internet Explorer or Netscape Navigator." '762 Patent at col. 3, ll. 11-13. As shown above in the discussion of Fig. 1, the applet (2) contains both the internet browser and the internet browser window. The window thus cannot be located separately from the browser.

## VI. REMAINING DISPUTED TERMS

Groove Digital does not propose constructions for any other disputed terms and contends instead that all should be given their plain and ordinary meaning as would easily be understood by one of ordinary skill in the art at the time of the invention when read in light of the claims, specification, and prosecution history. Because the plain and ordinary meaning of those terms requires no more than the application of well-understood meanings, no further construction is necessary. *See, e.g., ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1325-26 (Fed. Cir. 2012). Groove Digital will respond to United Bank's proposed constructions

9

for those terms, as well as any terms that United Bank continues to contend are indefinite, in its responsive brief.

### VII. CONCLUSION

For the foregoing reasons, Groove Digital respectfully requests that the Court adopt its constructions proposed herein.

Dated: March 18, 2019                              Respectfully submitted,

/s/ William E. Bradley
William E. Bradley
Virginia State Bar #42623
Kyle G. Hepner
Virginia State Bar #76831
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Avenue, S.W.
Suite 400
Washington, D.C. 20024
Tel: (202) 747-9560
Fax: (202) 347-1819
webradley@michaelbest.com
kghepner@michaelbest.com

Brian S. Seal (*pro hac vice*)
Thomas G. Southard (*pro hac vice*)
BUTZEL LONG, PC
1909 K Street, N.W.
Suite 500
Washington, D.C. 20006
Tel: (202) 454-2800
Fax: (202) 454-2805
seal@butzel.com
southard@butzel.com

***Attorneys for Plaintiff Groove Digital, Inc.***

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 18, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the counsel of record who have appeared in this case on behalf of the parties.

      /s/ William E. Bradley
      William E. Bradley
      Virginia State Bar #42623
      MICHAEL BEST & FRIEDRICH LLP
      1000 Maine Avenue, S.W.
      Suite 400
      Washington, D.C. 20024
      Tel: (202) 747-9560
      Fax: (202) 347-1819
      webradley@michaelbest.com