IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| GROOVE DIGITAL, INC., | ) |
| --- | --- |
| Plaintiff, | ) Civil No. 1:18-cv-00966 |
| v. | ) Hon. Liam O'Grady |
| UNITED BANK, Defendant. | ) |

## ORDER

This matter comes before the Court on the parties' motions for the construction of disputed claim terms in U.S. Patent No. 9,454,762 (the '762 patent). The motions are fully briefed and the Court held a *Markman* hearing on April 16, 2019.

### I. Legal Standard

A typical infringement suit has two steps: construing the patent and then determining whether infringement occurred. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). "The first is a question of law, to be determined by the court, construing the letters-patent, and the description of the invention and specification of a claim annexed to them. The second is a question of fact, to be submitted to a jury." *Id.* (quoting *Winans v. Denmead*, 56 U.S. 330, 338 (1853)). Therefore, in the context of patent law, "[t]he claim define[s] the scope of a patent grant" and under *Markman*, the court, rather than the jury, is to determine the meaning of the disputed terms in a given claim. *Id.* at 373. Once the meaning of the terms has been established, the factual question of infringement is then submitted to a jury. *Id.*

1

The Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.* remains the guiding light for district courts engaging in the exercise of claim construction. 415 F.3d 1303, 1309 (Fed. Cir. 2005). To begin, *Phillips* reiterates that the patent's claims define the patentee's right to exclude, and "the words of a claim 'are generally given their ordinary and customary meaning.'" *Id.* at 1313 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In some cases, the ordinary meaning may be readily apparent to lay judges, in which case the Court may construe terms by applying the basic meaning of commonly-understood words. *Id.* at 1314.

In general, however, the "ordinary and customary meaning" is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* A person of ordinary skill in the art is presumed to read the claim term in the context of the entire patent. *Id.* Thus, the patent specification and the patent prosecution history both provide a useful tool for construing the precise meaning of patent terms. *Id.* (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1988)). Accordingly, there are three primary sources that should first be consulted in a claim construction inquiry: (1) the claims; (2) the specification; and (3) the prosecution history. *See id.* In certain circumstances, courts may also look to external sources such as dictionaries and treatises to guide their inquiry. *Id.*

Although claim language is the analytical starting point, it "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (internal citations and quotation marks omitted). "The specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F. 3d at 979. Therefore, "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *On-Line Tech. v.*

*Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) (internal citations and quotation marks omitted). On the other hand, courts should not stretch the specification too far, and should be wary of not reading the specification into the claim as a limitation. *See Phillips*, 415 F.3d at 1315; *see also Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims.").

In addition to the claims and the specification, the Court must consider the prosecution history, which consists of the complete record of the proceedings before the United States Patent and Trademark Office ("USPTO"). *Phillips*, 415 F.3d at 1317. Because the prosecution history reflects ongoing negotiation between the USPTO and the patent applicant, however, its precise import is not always clear. *See Trading Tech. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010). Nonetheless, when a patent applicant has clearly and unambiguously disclaimed a given construction of a term in the patent prosecution process, she may not turn around and argue for that construction at a later stage. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003). Whether by reference to the specification or the prosecution history, "the standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016). As the Federal Circuit has made clear, the doctrine of claim disavowal extends to statements made during the *inter partes* review of a patent. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017).

## II. Person of Ordinary Skill in the Art

The Court finds a person of ordinary skill in the art to be a person with at least a Bachelor's Degree in Computer or Electrical Engineering, Computer Science, Human Factors, or

equivalent engineering discipline with a specialization in computer human interaction and user interfaces, or equivalent training; and approximately three years of experience working on graphical user interfaces for computer systems, including experience with electronic alerts.

## II. Claim Construction

The Court construes the disputed claims as follows.

| Term | Final Construction |
|---|---|
| "applet" | "a program installed by a user onto the user's device that is served based on a geotargeted specification, provides at least one browser link to a specific web page, is capable of displaying content from a party other than the party supplying the applet application, and excludes email, fax, text messages, telephone calls, mail notifications, and pop-ups." |
| "applet application" | "an application that runs one or more applets, and is capable of displaying the one or more queued and staged applets on the virtual desktop without requiring a network connection when the applet is deployed." |
| "internet browser" | "a program that enables the user to find, locate, retrieve, and navigate any web pages on the internet" |
| "internet browser window" | "a location in the applet where content from the internet is displayed by an internet browser" |
| "wherein the applet application passively deploys one or more applets at a time of deployment" | Plain meaning |
| "wherein an internet browser is configured to deploy subsequent to deployment of the one or more applets based on at least one action or inaction of the user, Wherein at least one of the applets is configured to become idle upon deployment of the internet browser" | Plain meaning |
| "become idle" | "disable the deployed applet when the internet browser is deployed and halt deployment of applets while the internet browser is displayed" |
| "wherein the microprocessor compares the first set of information to the second set of | "wherein the microprocessor compares the first set of information to the second set of information to determine whether the content should be transmitted to the |

| | |
|---|---|
| "information to determine whether the content should be transmitted to the networked device for display by the one or more applets." | networked device for display by the one or more applets using at least geo-target specifications." |
| "comparing the first set of information to a second set of information relating to parameters for transmission of the content to the networked device" | "comparing the first set of information to a second set of information relating to parameters for transmission of the content to the networked device using at least geo-target specifications" |
| "computer readable program code used to compare the first set of information to a second set of information relating to parameters for transmission of the content to the networked device" | "computer readable program code used to compare the first set of information to a second set of information relating to parameters for transmission of the content to the networked device using at least geo-target specifications" |
| "wherein the content is based on a comparison of a plurality of data sets via the microprocessor, and wherein the microprocessor based on the comparison determines whether the content should be transmitted to the networked device for display by the one or more applets" | "wherein the content is based on a comparison of a plurality of data sets via the microprocessor, and wherein the microprocessor based on the comparison determines whether the content should be transmitted to the networked device for display by the one or more applets using at least geo-target specifications" |

## III. CONCLUSION

For the reasons set forth above, the Court hereby **ISSUES** this Memorandum Opinion and Order as the construction of the disputed claim terms in the '762 patent.

It is **SO ORDERED.**

April 24/2019
Alexandria, Virginia

Liam O'Grady
United States District Judge